# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1243 | **DATE** | 3/29/2001 |
| **CASE TITLE** | Terrance Love vs. Michael F. Sheahan, Sheriff of Cook County, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 4/17/2001 at 10:00 A.M.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motion to dismiss [42-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TERRANCE LOVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 99 C 1243 |
| ) | |
| MICHAEL F. SHEAHAN, Sheriff of Cook ) | Magistrate Judge Nan R. Nolan |
| County, JAMES W. FAIRMAN, ) | |
| DIVISION 5 ASSISTANT DIRECTOR ) | |
| CARTER, DIVISION 9 CHIEF JOHNSON, ) | |
| ERNESTO VALASCO, MARCUS LYLES, ) | DOCKETED |
| and UNKNOWN COOK COUNTY ) | MAR 3 0 2001 |
| DEPARTMENT OF CORRECTIONS ) | |
| EMPLOYEES ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Terrance Love ("Love") brings this section 1983 action against Defendants Michael F. Sheahan, Sheriff of Cook County; James W. Fairman, Director of the Cook County Department of Corrections; Division 5 Assistant Director Carter; Division 9 Chief Johnson; Ernesto Valasco; Marcus Lyles; and Unknown Cook County Department of Corrections Employees (collectively "Defendants"). Love's Second Amended Complaint alleges that Defendants violated his constitutional liberty rights by subjecting him to punishment while he was held as a pretrial detainee at the Cook County Jail and by depriving him of these rights without affording him procedural protections. Defendants Sheahan, Fairman, Valasco, and Lyles move to dismiss the complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] The parties have consented to the jurisdiction of the United States Magistrate Judge Pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

On January 28, 2000, Magistrate Judge Ian H. Levin issued a Memorandum Opinion and Order dismissing Terrance Love's Amended Complaint as partially time barred (from May 29, 1995 to February 22, 1997) and for failure to state a claim against Defendants in either their individual or official capacities. Love v. Cook County, 82 F. Supp. 2d 911 (N.D. Ill. 2000). Magistrate Judge Levin further held that Love's Amended Complaint could not withstand the Defendants' claims of qualified immunity. Id. at 919-20. Magistrate Judge Levin allowed Love twenty-eight days to amend his complaint to cure all deficiencies. Id. at 920. On February 25, 2000, Love timely filed his Second Amended Complaint (herein cited as "SAC"). Love's case was subsequently reassigned to this Court's calendar.

Love's complaint alleges the following facts which are taken as true for purposes of ruling on the motion to dismiss. Fredrick v. Simmons Airlines, Inc., 144 F.3d 500, 502 (7th Cir. 1998). On April 8, 1994, a Cook County judge ordered Love detained at the Cook County Jail while awaiting trial on a murder charge. SAC ¶ 15. The jail assigned Love to the general population. Id. Initially, Love was assigned to Tier H of Division 1 but was moved to Tier B on April 1, 1995. Id.

---

[1] The Cook County State's Attorney's Office has filed this motion to dismiss on behalf of Defendants Sheahan, Fairman, Valasco and Lyles. Defendants Carter and Johnson are newly named Defendants in the Second Amended Complaint, and according to Defendants' memorandum of law in support of the motion to dismiss, have not been served.

On May 28, 1995, Allen Fields, a detainee affiliated with the Disciples gang (a rival gang to Love's), was stabbed to death during a jail riot on Tier B. Id. at ¶ 18. Love alleges that after a one-day investigation which led to immediate criminal charges against him, prison officials punished Love believing that he (along with three other men) murdered Fields. Id. at ¶¶ 23, 24, 25, 28. Prison officials placed Love in segregation from May 29, 1995 until a Cook County judge dismissed the murder charge on February 20, 1998. Id. at ¶¶ 34-35. During his time in segregation, Love remained isolated in a ten foot square cell for twenty-three hours a day. Id. at ¶¶ 24, 25. The cell had concrete walls, a six inch square window set in the cell's metal door, and no window to the outside. Id. at ¶ 25. Prison officials let Love out of his cell for no more than one hour a day but not without shackling his feet and hands and ensuring that he did not converse or otherwise communicate with other detainees. Id. According to Love, he suffered great physical pain, discomfort, muscle atrophy, and extensive emotional and mental injury as a result of being confined in segregation for such an extensive period of time. Id. at ¶ 54.

Love claims he did not understand why he was placed in segregation or why he remained there for so long. No prison official provided Love with a written explanation regarding his segregation status. Id. at ¶ 29. Further, Love learned that six members of the Disciples gang (hereinafter "the Disciples Six") were placed in segregation for only thirty days following allegations that they committed an in-jail murder the day before the Fields murder. Id. at ¶ 32. Love repeatedly questioned prison officials including Defendants about his segregation status. Id. at ¶ 29. Upon questioning by Love, Defendants Lyles, Fairman, and Johnson told Love "you are down here for killing that guy," while some unidentified Defendants stood mute or merely stated that Love was in

segregation because he "killed that guy" and "we know you did it." Id. Other Defendants told Love that he was in segregation because some "Latino guys ID'ed you." Id. at ¶ 23.

Love believes he was accused of the Fields murder based upon unreliable evidence. Id. at ¶ 21. The sole evidence against Love came from five detainees, at least four of whom were rival gang members, that identified Love while their own clothes bore blood stains. Id. Love, who was interviewed by authorities, had no blood stains on his person or clothing. Id. at ¶ 26. Moreover, no evidence against Love existed within a week of the alleged murder when Love's accusers recanted their statements implicating him. Id. at ¶ 27.

Love further alleges that any claim by Defendants that they held him in segregation for "security" purposes would be pretextual because (1) Defendants never informed Love or his attorney that Love was being held in segregation for security purposes; (2) Defendants' own statements reflect an intent to punish Love for the Fields murder; and (3) Defendants placed the similarly situated Disciples six in segregation for only thirty days. Id. at ¶ 43.

Love also alleges that Defendants failed to provide him with any procedures to seek redress. Id. at ¶¶ 29-33. Defendants did not afford Love due process under the published procedures in place for continual review of a pretrial detainee's segregation status. Id. at ¶ 35. Defendants ignored letters by Love and his attorney. Id. at ¶¶ 30-32. Specifically, Love wrote grievance letters to Defendants requesting an explanation for his segregation status, a hearing, and/or release from the segregation unit. Id. at ¶¶ 30, 31. Love's attorney, Kevin Peters, telephoned Division 9 Chief Johnson demanding to know why Love was being held in segregation for such an excessive length of time in comparison to the Disciples Six, especially since Love's accusers had recanted their allegations. Id. at ¶ 32. Peters wrote to Division 5 Assistant Director Carter regarding Love's

confinement with the same complaints and inquiries. Id. Neither Carter nor Johnson replied. Id. at ¶¶ 32, 33. Love never received a hearing during his segregation. Id. at ¶ 31.

## II. ANALYSIS

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. Gibson v. Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss, the court takes all factual allegations in the plaintiff's complaint as true and draws all reasonable inferences in his favor. Fredrick, 144 F.3d at 502.

Defendants raise the following arguments in support of their motion to dismiss: (1) Love has failed to state a constitutional claim against Defendants in both their individual and official capacities; (2) Defendants are shielded from liability by the qualified immunity defense; and (3) the statute of limitations bars a large portion of Love's claims. Defendants also ask this Court to strike Love's claim for punitive damages. These issues are discussed below.

### A. Individual Capacity

#### 1. Deprivation of Constitutional Rights

Defendants contend that Love's complaint does not adequately allege constitutional violations which are necessary to state a § 1983 claim. Love raises two claims. First, Love alleges that Defendants deprived him of substantive due process by placing him in segregation as punishment for the Fields murder which occurred while he was a pretrial detainee (hereinafter "Love's unconstitutional punishment claim"). Second, Love claims that Defendants failed to provide

him with procedural due process in connection with his placement in segregation (hereinafter "Love's procedural due process claim"). The sufficiency of these claims is discussed in turn.

It is a fundamental principal that the government may not subject an accused held in pretrial detention to any form of punishment for the crime for which he is charged. Bell v. Wolfish, 441 U.S. 520, 535 (1979). Any other rule would render nugatory the basic proposition that a person is presumed innocent until proven guilty. Id. Nevertheless, a person lawfully detained in pretrial confinement is subject to certain restrictions on his liberty and the government may take measures reasonably calculated to effectuate pretrial detention. Id. at 537. Moreover, government officials may take necessary measures that impose heightened restrictions if such restrictions serve a legitimate governmental goal other than punishment. Id. at 538. If the government's actions are rationally related to a legitimate non-punitive purpose, a court will not deem the actions punitive unless they appear excessive in relation to the alleged purpose.[2] Id.

"In addition to the regulatory measures that prison officials may take to ensure the effectiveness of pretrial confinement, a pretrial detainee can be punished for misconduct that occurs while he is awaiting trial in a pretrial confinement status." Rapier v. Harris, 172 F.3d 999, 1003 (7th Cir. 1999). "Notably, the basis for this punishment is not the underlying crime of which he stands accused; rather, this punishment is based upon the detainee's actions while in pretrial confinement." Id. Love alleges that Defendants punished him for the Fields murder, not for the crime that led to his detention, by placing him in segregation for over two and a half years. Because Defendants had

---

[2] Jail officials cannot legitimize excessive measures by merely asserting a non-punitive purpose. Id. at 539 n. 20. For example, officials cannot justify "loading a detainee with chains and shackles and throwing him in a dungeon" to ensure his presence at trial and to preserve the jail's security when it is clear that less harsh methods are available. Id.

the constitutional authority to punish Love for misconduct which occurred during his pretrial detention, Love's claim that Defendants punished him for the Fields murder does not state a claim for a violation of his liberty interest as a pretrial detainee in not being punishment. Defendants' motion to dismiss this claim is granted.

The next inquiry is whether Love has sufficiently alleged a procedural due process claim. "In contrast to substantive due process claims, [i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Brokaw v. Mercer County, 235 F.3d 1000, 1020 (7th Cir. 2000) [internal quotation marks omitted]. While a pretrial detainee can be punished for infractions that occurred while in pretrial custody, "that punishment can be imposed only after affording the detainee some sort of procedural protection." Rapier, 172 F.3d at 1005. Here, Love alleges that Defendants punished him for the Fields murder by placing him in segregation for over two and a half years. Love alleges that Defendants failed to provide him with a written explanation of the reason for his confinement in segregation, Defendants failed to consider relevant exculpatory evidence, and Defendants did not afford him a hearing either before or at any point during his extended stay in segregation. SAC ¶¶ 30-33, 35. Love adequately states a procedural due process claim.

Defendants contend that Love fails to state a procedural due process claim because he has not alleged that: (1) "his confinement was contrary to state law or regulation written in explicitly mandatory language," and (2) his confinement "imposed an atypical and significant hardship" as required by Sandin v. Conner, 515 U.S. 472 (1995). Defendants heavy reliance on Sandin is misplaced.

In Hewitt v. Helms, 459 U.S. 460 (1983), the Supreme Court held that, "while a convicted inmate possessed no liberty interest in being housed with the general prison population, states could create such a liberty interest if they promulgated mandatory regulations which entitled a prisoner to due process before being placed in segregation." Oliver v. Hinton, 1996 WL 99901, *3 (N.D. Ill. Feb. 29, 1996). The Supreme Court moved away from the Hewitt methodology of focusing on interpretation of state prison regulations in Sandin. The Sandin court held that a liberty interest "will be generally limited to freedom from restraint which, will not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. For convicted inmates, punishment and discipline fall within the "expected parameters of the sentence imposed by a court of law." Id. at 485.

Sandin's holding that convicted inmates have a protectable liberty interest only when prison officials' treatment goes beyond the normally expected incidents of prison life does not apply to pretrial detainees. Rapier, 172 F.3d at 1002-05. Because pretrial detainees are not under a sentence of confinement, "it cannot be said that they ought to expect whatever deprivation can be considered incident to serving such a sentence." Id. at 1004-05. As a pretrial detainee, Love need not allege that Defendants' actions imposed atypical and significant hardship in relation to the ordinary incidents of prison life.

The Rapier court further held that distinguishing between nonpunitive measures that are not subject to procedural protection and punitive measures that are subject to due process restrictions does not depend on whether state regulations created a protectable liberty interest. Rapier, 172 F.3d at 1005-06. Because Love may not be punished without due process regardless of state regulations,

-8-

he need not allege that his confinement was contrary to state law written in mandatory language. Zarnes v. Rhodes, 64 F.3d 285, 292 (7th Cir. 1995); Whitford v. Boglino, 63 F.3d 527, 531 n.4 (7th Cir. 1995). Love alleges that Defendants' actions constituted punishment for his conduct while he was a pretrial detainee and that he was denied procedural due process in connection with that punishment. Love's allegations are sufficient.

### 2. **Personal Involvement**

Defendants contend that their failure to respond to letters regarding Love's prolonged placement in segregation does not adequately allege their personal involvement. In order to state a cause of action against a defendant in her individual capacity, the plaintiff must allege facts which show that defendant was "personally involved in the deprivation of the plaintiff's constitutional rights." Gossmeyer v. McDonald, 128 F.3d 481, 494 (7th Cir. 1997). An official meets the "personal involvement requirement" when "she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." Black v. Lane, 22 F.3d 1395, 1401 (7th Cir. 1994). That is, the official "must know about the conduct, and facilitate it, approve it, condone it, or turn a blind eye . . . ." Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). While an official cannot be held liable on a theory of respondeat superior, allegations that she knew of subordinates' offending conduct but failed to take preventative action are sufficient to allege personal liability. Black, 22 F.3d at 1401.

Love's complaint alleges that he wrote grievance letters to each Defendant requesting an explanation for his segregation status, a hearing, and/or release from the segregation unit. SAC ¶¶ 30, 31. Love alleges that his lawyer spoke to Division 9 Chief Johnson on the telephone and wrote

to Division 5 Assistant Director Carter about Love's continued confinement, but neither Johnson nor Carter responded to Love's concerns. Id. at ¶¶ 32, 33. Gentry makes clear that officials' failure to respond to written complaints may sufficiently demonstrate knowledge of the constitutional deprivation and a decision to turn a blind eye. Gentry, 65 F.3d at 561; see also Coughlin v. Sheahan, 1995 WL 12255, *6 (N.D. Ill. 1995). Thus, Love's claim that he and his lawyer wrote complaint letters sufficiently alleges the personal involvement of Defendants Carter, Johnson, Valasco, and Lyles to survive a motion to dismiss. Whether Love can prove that his alleged letters furnished these Defendants with the requisite knowledge is a question of fact to be answered at another time. See Vance v. Peters, 97 F.3d 987, 993-94 (7th Cir. 1996) (at summary judgment, plaintiff must offer evidence that her letters gave the officials knowledge of a constitutional deprivation but that the officials turned a blind eye).

Love's claims against Michael Sheahan as Sheriff of Cook County and James W. Fairman as Director of the Cook County Department of Corrections require a separate analysis. See Antonelli v. Sheahan, 81 F.3d 1422 (7th Cir. 1995). In Antonelli, the Seventh Circuit held that a pretrial detainee's claim that he wrote complaint letters "addressed directly to Sheriff Sheahan or to Director Fairman" does not sufficiently allege the personal involvement of such senior officials unless the detainee's letters disclose a personal constitutional violation "of the gravest nature" or a "systemic" constitutional violation. Antonelli, 81 F.3d at 1428-29. Love's alleged procedural due process deprivations are not within the realm of "the gravest [in] nature." Nor has Love alleged any systemic constitutional violation. Love's claims against Defendants Sheahan and Fairman are dismissed.

### 3. Deliberate Indifference

Defendants further claim that Love has failed to sufficiently plead that they acted with the requisite mental state. To hold a prison official individually liable for violation of a detainee's constitutional rights, the plaintiff must allege that the official acted with deliberate indifference to his rights. Antonelli v. Sheahan, 81 F.3d at 1428. "Conduct is deliberately indifferent when the defendant acts in an intentional or criminally reckless manner." Id. Defendants contend that under Vance v. Peters, 97 F.3d 987 (1996), a plaintiff must specifically allege that the defendants were aware of "an excessive risk to inmate health or safety" in order to state a claim under § 1983. Relying upon this interpretation of Vance, Defendants argue that their failure to respond to Love's grievance letters does not show deliberate indifference because the complaint contains no allegations that the letters informed Defendants that Love faced risks of physical or mental injury while he remained in segregation.

Defendants' reliance upon Vance is misplaced for two reasons. First, the Vance court's discussion of a plaintiff's burden to show that his communications gave the defendants notice of health and safety risks arose during review of a summary judgment motion. Vance, 97 F.3d at 993-94. In order to survive a motion to dismiss, the complaint need only plead the legal conclusion that the defendant acted with the requisite mental state. Antonelli, 81 F.3d at 1429 (deliberate indifference sufficiently plead where plaintiff's complaint alleged: "the actions [of the defendants] were deliberate and intentional and were done with malice toward plaintiff" and that "[s]aid actions were done with reckless disregard for the rights of plaintiff . . . ."); see also Triad Assoc. Inc., v. Robinson, 10 F.3d 492, 497 (7th Cir. 1993) ("in this circuit on a motion to dismiss we require no more from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum

and Rule 9(b)'s requirement that motive and intent be pleaded generally."). Love's complaint alleges Defendants acted with deliberate indifference to his rights. Specifically, Love alleges that "each of the Defendants personally and individually acted or failed to act with a deliberate or reckless disregard of Plaintiff Love's Constitutional rights; and directed or knew of and consented to the conduct that caused the deprivation of Plaintiff Love's Constitutional rights." SAC ¶ 13. The complaint further states: "[w]ith callous disregard and with reckless or deliberate indifference to Plaintiff Love's rights each of the individual Defendants knew Mr. Love's constitutional rights were being violated and each failed to take the appropriate corrective action and secure Plaintiff Love's release from confined segregation." Id. at ¶48. Love's allegations satisfy the element of deliberate indifference.

Second, the Vance opinion is not determinative of this case because it discusses the need for plaintiffs to establish "an excessive risk to inmate health and safety" in the context of Eighth Amendment claims involving allegations of inadequate medical care or placement in inhumane conditions. Vance, 97 F.3d at 992-93. Indeed, Vance involved an inmate's claims that she was denied adequate medical care while incarcerated. Id. at 988. Love need not specifically allege that Defendants disregarded a health or safety risk because Love does not contend that he received inadequate medical care or that the specific conditions in segregation were so harsh as to unconstitutionally endanger his health or safety.

**B.** **Official Capacity**

Defendants also argue that Love has failed to state a claim against them in their official capacities. While Love's prior complaint referenced an intent to sue the Defendants in both their official and individual capacities, the Second Amended Complaint omits any mention of an official

capacity claim. Nor has Love pled that an official policy caused the alleged constitutional violations. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-91 (1978). Further, Love has not addressed Defendants' arguments on this issue in his response brief nor has he disputed Defendants' contention that Love's counsel orally informed defense counsel that an official capacity claim would not be raised in the Second Amended Complaint. Defendants' motion is granted to the extend the Second Amended Complaint attempts to state an official capacity claim.

## C. Qualified Immunity

Defendants move to dismiss Love's procedural due process claim on the ground of qualified immunity. "Under the doctrine of qualified immunity, 'governmental officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Kernats v. O'Sullivan, 35 F.3d 1171, 1176 (7th Cir. 1994). The Seventh Circuit has developed a two-part inquiry for determining whether the qualified immunity defense applies: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" Id. "[Q]ualified immunity may be raised in a motion to dismiss, but at that stage, we consider only the facts in the complaint which we are obligated to accept as true." Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 471 (7th Cir. 1997).

It has been previously determined that the conduct alleged by Love states a constitutional claim. The Court must next determine whether the law was clearly established at the time of Defendants' alleged actions that a pretrial detainee placed in segregation as punishment for misconduct which occurred during the pretrial incarceration is entitled procedural protections. Rapier, 172 F.3d at 1006. In the context of a qualified immunity defense, binding precedent is not

needed to clearly establish a right. Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir. 1988); Brokaw v. Mercer County, 235 F.3d 1000, 1002 (7th Cir. 2000). In the absence of binding precedent a court "should look to whatever decisional law is available" in order to determine whether the law is clearly established. Rakovich, 850 F.2d at 1209.

Rapier, decided April 19, 1999, unquestionably held that "it is permissible to punish a pretrial detainee for misconduct while in pretrial custody, [but] that punishment can be imposed only after affording the detainee some sort of procedural protection." Id. at 1005. In Rapier, the Seventh Circuit held that the defendants were entitled to qualified immunity for alleged procedural due process violations which began in 1992 and continued into 1993 because at the time the defendants acted it was not clearly established "that certain procedural protections must attend any disciplinary measures taken against pretrial detainees." Rapier, 172 F.3d at 1006. The court further noted that while Bell made clear in 1979 that a pretrial detainee could not be punished for the underlying crime for which he was being detained, the law was not clearly established in 1992 and 1993 "with respect to the need for additional procedural safeguards when prison officials impose punitive sanctions for misconduct while awaiting trial." Id.

Rapier acknowledged that First and Ninth Circuit decisions decided on April 7, 1995 and January 26, 1996 "recognized specifically that pretrial detainees may constitutionally be punished for infractions committed while awaiting trial, but also [] recognized the need for procedural protections prior to the imposition of any punishment." Rapier, 172 F.3d at 1003 (citing Mitchell v. Dupnik, 75 F.3d 517 (9th Cir. 1996) and Collazo-Leon v. United States Bureau of Prisons, 51 F.3d 315, 318 (1st Cir. 1995)). The Rapier court also noted that the Seventh Circuit indicated in dictum

in Whitford v. Boglino, 63 F.3d 527, 531 n.4 (7th Cir. 1995), that a pretrial detainee has the right to a hearing in connection with punishment for disciplinary infractions. Rapier, 172 F.3d at 1004.

Construing the allegations in the light most favorable to Love, Love seeks to hold Defendants liable for confining him in segregation between May 29, 1995 and February 20, 1998 without any procedural protections. Love's complaint, fairly read, alleges that prior to and while being held in segregation, Defendants violated his procedural due process rights by failing to provide him with written notice of the reason for his segregation, a hearing, and continual review of his confinement status and by failing to consider relevant exculpatory evidence. SAC ¶¶ 30-33, 35. Only the Collazo-Leon opinion relied on by the Rapier court was decided before Love's placement in segregation. However, Defendants duty to provide Love with certain procedural protections became apparent long before his release from segregation. On January 26, 1996, the Ninth Circuit held that "pretrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule." Mitchell, 75 F.3d at 524. Because it was clearly established during the time that Love was held in segregation that Love was entitled to certain procedural protections, Defendants are not entitled to qualified immunity.

D. **Statute of Limitations**

Defendants also contend that Love's claim is barred by the statute of limitations for the period May 29, 1995 through February 22, 1997. The Seventh Circuit holds that state law, 735 ILCS 5/13-202, sets a two-year period of limitations for § 1983 claims arising in Illinois. Farrell v. McDonough, 966 F.2d 279, 280-82 (7th Cir. 1992). Under Illinois law, "[a]ctions for damages for an injury to the person . . . shall be commenced within 2 years next after the cause of action accrued." 735 ILCS 5/13-202. The date upon which the statute of limitations begins to run, or when the cause

-15-

of action accrued, is controlled by federal law. Wilson v. Gieson, 956 F.2d 738, 740 (7th Cir. 1991). In this Circuit, civil rights claims accrue "when the plaintiff knows or should know that his or her constitutional rights have been violated." Id.

Love filed his complaint on February 22, 1999. Defendants seem to advocate that the limitations period should be calculated by counting backwards two years from the date Love filed his complaint, i.e., Love may only seek damages incurred after February 22, 1997. Defendants' position is incorrect. The limitations period is calculated by counting forward from the date when Love's claim accrued. Neither party has suggested an accrual date when Love knew or should have known that his procedural due process rights were violated. Additional facts are needed to determine the precise contours of Love's procedural due process claim and when his claim accrued. Taking all inferences in Love's favor at this stage of the litigation, it is not beyond doubt that Love can prove no set of facts establishing that his claim is within the period of limitations. Therefore, Defendants' motion is denied without prejudice as to the statute of limitations issue.

### E. Punitive Damages

Defendants request that this Court strike Love's punitive damage claim against the Defendants in their individual capacities. A plaintiff may properly seek punitive damages in a § 1983 action for individual liability. Smith v. Wade, 461 U.S. 30, 35 (1983). "[R]eckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." Id. at 51. Love has made the necessary allegations to state a claim for punitive damages against the Defendants in their individual capacities. As previously discussed, Love has plead that Defendants acted intentionally,

recklessly, and with callous disregard for his constitutional rights. See SAC ¶¶ 48, 53. Defendants' request that the Court strike Love's punitive damage claim is denied.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The parties are directed to appear for a status hearing on April 17, 2001 at 10 am.

ENTER:

*Nan R. Nolan*
**Nan R. Nolan**
**United States Magistrate Judge**

Dated: March 29, 2001